*Formatted for Electronic Distribution*                                                                                                         *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

In re:

    Sulaiman Jadallah,                                                     Chapter 7 Case
                Debtor.                                                                    # 09-10527

Filed & Entered
On Docket
July 21, 2010

Maryam Robare,
                Plaintiff,
    v.                                                                                          Adversary Proceeding
Sulaiman Jadallah,                                                                     # 09-1031
                Defendant.

*Appearances:*    *David W. Lynch, Esq.*              *John C. Gravel, Esq.*
                            *Colchester, VT*                          *Burlington, VT*
                            *For Maryam Robare*              *For Sulaiman Jadallah*

## MEMORANDUM OF DECISION
### GRANTING JUDGMENT IN FAVOR OF THE PLAINTIFF

        On August 2, 2009, Maryam Robare (the "Plaintiff") filed a complaint against Sulaiman Jadallah (the "Debtor") seeking a determination that the Debtor's debt to her is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)[1] (doc. # 1). The Debtor filed an answer on September 3, 2009 (doc. # 3). On April 7, 2010, the parties filed a joint pre-trial statement and statement of undisputed material facts (doc. # 15). The Court held an evidentiary hearing on June 1, 2010, and heard testimony from the Plaintiff, the Debtor, and the Plaintiff's witnesses, Gabe Handy and Karen Cyr. On June 16, 2010, the Plaintiff filed a post-trial memorandum of law (doc. # 22), and the Debtor filed a post-trial memorandum of law on June 23, 2010 (doc. # 24). Based upon the entire record in this case, including the pleadings filed, the evidence and arguments presented at the trial, and the post-trial briefing, the Court finds that the Plaintiff has proven that the debt the Debtor owes to her was incurred through the use of false representations, and thus may not be discharged in bankruptcy, pursuant to § 523(a)(2)(A). Therefore, for the reasons set forth below, the Court grants judgment in favor of the Plaintiff.

---

[1] Unless otherwise specified, all statutory citations refer to Title 11 of the United States Code.

**JURISDICTION**

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

**FACTUAL BACKGROUND**

The record and testimony establish the following facts. Prior to making the loans at issue in the instant adversary proceeding, the Plaintiff worked as an employee of the Debtor for several years at one of the Debtor's two restaurants (doc. # 1, ¶ 11; doc. # 3, ¶ 11). On February 8, 2005, the Debtor requested that the Plaintiff loan him $50,000.00 (doc. # 1, ¶ 4; doc. # 3, ¶ 4), and the Plaintiff made that loan to the Debtor (doc. # 1, ¶ 5; doc. # 3, ¶ 5; doc. # 15, p. 1). In subsequent months, the Plaintiff loaned the Debtor an additional $10,000.00 (doc. # 1, ¶ 6; doc. # 3, ¶ 6; doc. # 15, p. 1). The Debtor represented to the Plaintiff that he needed the money to make domestic support obligation payments owed to his ex-wife, Ms. Cyr (doc. # 15, p. 1). When the Debtor borrowed the money from the Plaintiff, his intention was to apply a portion of it toward his domestic support obligation and to use the remainder of the money for business purposes at his restaurant (doc. # 15, p. 2).

The Debtor gave the Plaintiff a series of checks in the amount of $5,000.00 each, representing the full repayment of the two loans, which the Plaintiff was to deposit upon the Debtor's instructions (doc. # 15, p. 1). In November 2005, the Plaintiff successfully negotiated two of the checks, totaling $10,000.00 (doc. # 15, pp. 1–2; doc. # 22, p. 3). The Debtor subsequently closed the bank account upon which the checks were drawn, knowing of the Plaintiff's outstanding checks (doc. # 15, p. 2). The Debtor repaid the Plaintiff an additional $5,000.00 in May 2006 (doc. # 22, p. 3), leaving an outstanding balance of $45,000.00.

On or about August 11, 2006, the Plaintiff commenced a collection action against the Debtor in state court (doc. # 1, ¶ 9; doc. # 3, ¶ 9). On April 26, 2007, the state court granted judgment in favor of the Plaintiff in the amount of $45,000.00, plus costs of $314.17, with pre-judgment interest in the amount of $9,202.20, and post-judgment interest at the legal rate on $45,314.17 (doc. # 1, ¶ 10; doc. # 1-1; doc. # 3, ¶ 10, doc. # 15, p. 2). The Debtor filed a voluntary petition for chapter 7 relief on May 6, 2009 (# 09-10527, doc. # 1).[2]

---

[2] Exhibits admitted at trial include, <u>inter alia</u>, copies of two checks from the Plaintiff to the Debtor, twelve checks from the Debtor to the Plaintiff, the Plaintiff's complaint in the state court collection action, the Debtor's answer in the state court collection action, the state court Order on motion for summary judgment awarding judgment in favor of the Plaintiff, and the Debtor's bankruptcy petition and schedules. (<u>See</u> Pl.'s Exs. 1, 2, 5, 6; Debtor's Exs. A, B.)

2

## DISCUSSION

Section 523 of the Bankruptcy Code provides in relevant part that a debt is excepted from discharge if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." § 523(a)(2)(A). To except a debt from discharge under § 523(a)(2)(A), the plaintiff must show that: 1) the debtor made the representation; 2) at the time of the representation, the debtor knew it to be false; 3) the debtor made the representation with the intent and purpose of deceiving the plaintiff; 4) the plaintiff justifiably relied on the representation; and 5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made. See Field v. Mans, 516 U.S. 59 (1995); Flexi-Van Leasing v. Perez (In re Perez), 155 B.R. 844, 848–49 (Bankr. E.D.N.Y. 1993) (citations omitted); Collier on Bankruptcy ¶ 523.08[1][e]. The standard of proof in a § 523 action is a preponderance of the evidence standard, and the burden of proof is upon the creditor seeking to have its debt excepted from discharge. Kessler v. Butler (In re Butler), 186 B.R. 371, 373–74 (Bankr. D. Vt. 1995) (citation omitted).

Regarding the first element of the Plaintiff's claim, that "the debtor made the representation," the Plaintiff testified at the evidentiary hearing that the Debtor represented to her both that he needed the initial $50,000.00 loan in order to make domestic support obligation payments owed to his ex-wife, Ms. Cyr, as well as that he had to repay Ms. Cyr in order to avoid going to jail. The Plaintiff further testified that when the Debtor requested the additional $10,000.00 loan, he said that money would allow him to fully repay Ms. Cyr, and led the Plaintiff to believe that he would use the loan proceeds solely to pay the domestic support obligation owed to Ms. Cyr, as there was no discussion that some money would be used for any other purpose.

The Debtor admitted in the joint pre-trial statement that he represented to the Plaintiff that he needed the money to make domestic support obligation payments (doc. # 15, p. 1). At the evidentiary hearing, the Debtor testified that he told the Plaintiff he would pay his ex-wife with the loaned funds, and that having this loan would solve his domestic support obligation problems. The Debtor also testified that he borrowed the additional $10,000.00 because a warrant was issued for his arrest, and that he told the Plaintiff that he would use the borrowed money to pay his ex-wife, Ms. Cyr, because if he failed to pay her the domestic support obligation he owed, Ms. Cyr would have him incarcerated.

The Court finds Plaintiff's testimony that the Debtor represented to her that he needed to borrow the money solely to make domestic support obligation payments to Ms. Cyr in order to avoid going to jail to be credible and persuasive. Accordingly, Plaintiff has met her burden regarding the first element of her

3

claim.[3]

The second element that the Plaintiff must show is that "at the time of the representation, the debtor knew it to be false." There is no dispute in this case that the Debtor knew the representation to be false when he made it. The Debtor admitted in the joint pre-trial statement that when he borrowed the money from the Plaintiff, his intention was to pay a portion of his domestic support obligation and to use the remainder of the money for business purposes at his restaurant (doc. # 15, p. 2), rather than to use the money solely for the purpose of paying the domestic support obligation to his ex-wife in order to avoid going to jail, as he represented to Plaintiff. The Debtor also admitted at the evidentiary hearing that he gave only some of the money to Ms. Cyr. Accordingly, the Plaintiff has met her burden regarding the second element of her claim.

With respect to the third element of the Plaintiff's claim, that "the debtor made the representation with the intent and purpose of deceiving the plaintiff," the Plaintiff testified that she met the Debtor at one of his two restaurants in 2003, and worked for the Debtor part-time until 2005. The Plaintiff also testified that, in addition to working for the Debtor at his restaurant, she provided the Debtor with occasional child care services. The Plaintiff testified that, during that time frame, she discussed with the Debtor her plan to sell her condominium and move to Arizona. The Plaintiff further testified that she listed the condominium for sale on November 9, 2004, and that she told the Debtor of the listing and how much profit she anticipated she would make from the sale of the condominium.

The Plaintiff testified that when she told the Debtor of her plans to sell her condominium and move to Arizona, the Debtor invited the Plaintiff to live with her until she moved. The Plaintiff further testified that she moved in with the Debtor part-time, splitting her time between the Debtor's house, her cousin's house, and her daughter's house, until she left for Arizona in July 2005. The Plaintiff testified that she would not have loaned money to someone she thought could not pay her back, and that she loaned the Debtor money because of their relationship and because she thought he would be able to repay her. The Plaintiff further testified that the Debtor treated her like family, and that she trusted him, especially because he invited her to live him with him in his home. The Plaintiff testified that she had never loaned large sums of money before, but that she was moved to loan the money to the Debtor because she understood the Debtor would go to jail if he did not pay the domestic support obligation owed to Ms. Cyr.

The Debtor testified that he was in the restaurant business from 1990 to 2009. The Debtor further testified that he operated two restaurants, one doing business as The Country Pantry, which he leased, and the other called Sam Charlemont, which he owned. The Debtor testified that each restaurant operation

---

[3] As judgment in favor of the Plaintiff is granted on the basis of the Debtor's representations that he needed to borrow the money solely to pay his domestic support obligation to his ex-wife and that he would go to jail if he did not pay her, the Court need not consider the other false representations the Plaintiff alleges the Debtor made.

4

had its own bank account. The Debtor admitted that he deposited $25,000.00 from the Plaintiff's original $50,000.00 loan into the account for The Country Pantry on February 9, 2005, which had negative cash flow without the Plaintiff's loan. Bank records for this account confirm that $25,000.00 was deposited into the account on February 9, 2005. (Pl.'s Ex. 4, p. 3; Debtor's Ex. C, p. 2.) The Debtor also admitted that the Sam Charlemont restaurant had negative income, and that he deposited the remaining $25,000.00 from the Plaintiff's original loan into the account for the Sam Charlemont restaurant. The Debtor further testified that the two restaurants eventually closed because he was not able to pay debts owed to the State of Vermont.

The Court finds the Plaintiff's testimony concerning the sale of her condominium, her relationship with the Debtor, and her reasons for loaning the money to the Debtor to be credible and persuasive. Based on the testimony of the Plaintiff and the Debtor, the Court finds that the Debtor misrepresented to the Plaintiff that he was borrowing the money solely for the purpose of paying his domestic support obligation to Ms. Cyr in order to avoid going to jail, with the intent and purpose of deceiving the Plaintiff so that she would lend him the money, which he actually intended to use in part for business expenses associated with his two failing restaurants. Accordingly, the Plaintiff has met her burden with respect to the third element of her claim.

The fourth element of the Plaintiff's claim is that "the plaintiff justifiably relied on the representation." The Plaintiff worked as an employee of the Debtor for several years at one of the Debtor's two restaurants (doc. # 1, ¶ 11; doc. # 3, ¶ 11). The Plaintiff and the Debtor developed a personal relationship; as the Court noted above, the Debtor treated the Plaintiff like family and invited her to live with him. The Plaintiff lived with the Debtor part-time after listing her condominium for sale in November 2004 until she moved to Arizona in July 2005. The Plaintiff trusted the Debtor, and loaned him an initial $50,000.00, and later an additional $10,000.00, based upon his representation that he needed to borrow the money to make domestic support obligation payments to Ms. Cyr in order to avoid going to jail.

Ms. Cyr testified at the evidentiary hearing that the Debtor owed her back payments for his support obligation in February 2005. Ms. Cyr also testified that she had filed a motion against the Debtor in December 2004 for contempt and that a proceeding had been held on December 21, 2004, at which her motion was denied. A copy of the docket from the Chittenden Family Court divorce proceeding includes a docket entry dated December 21, 2004, which states that "Parties FTA. Therefore, the motion is de nied [sic]," indicating that Ms. Cyr's motion was denied for failure to appear, rather than on the merits. (See Pl.'s Ex. 3, p. 8.) Ms. Cyr testified that the Debtor paid her three checks totaling $2,400.00 in February

2005, which she deposited on February 10, 2005.  Ms. Cyr further testified that the Debtor did not pay her $50,000.00 in February 2005.

On June 14, 2005, Ms. Cyr obtained an order from the Chittenden Family Court requiring the Debtor to pay her $10,000.00 by June 21, 2005, and further stating that the Debtor's "failure to pay may result in a finding of contempt and incarceration." (Debtor's Ex. D, p. 1.)  The Debtor testified that he borrowed the additional $10,000.00 from the Plaintiff in June 2005 in response to an arrest warrant, and that he was released from jail upon paying the $10,000.00 to Ms. Cyr.  Ms. Cyr testified that the Debtor paid her $10,000.00 in May or June 2005.  Bank records of the account for The Country Pantry restaurant indicate that a check written to Ms. Cyr in the amount of $10,000.00 was negotiated on June 24, 2005.[4] (Debtor's Ex. C, p. 3.)  On July 12, 2005, Ms. Cyr obtained an additional order from the Chittenden Family Court requiring the Debtor to pay her an additional $15,000.00 by August 4, 2005.  (Debtor's Ex. D., pp. 2–3.)  Bank records of the account for The Country Pantry restaurant show that two additional checks written to Ms. Cyr in the amounts of $10,000.00 and $5,000.00 were negotiated on August 12, 2005, and August 17, 2005, respectively.  (Debtor's Ex. C, p. 4.)

The Court finds Ms. Cyr's testimony regarding the Debtor's support obligation and payments to her to be credible and persuasive.  Based upon the personal relationship between the Plaintiff and the Debtor, the testimony of Ms. Cyr and the Debtor, and the exhibits admitted, the Court finds that the Plaintiff justifiably relied on the Debtor's representation that he needed to borrow the money solely to pay the domestic support obligation owed to his ex-wife in order to avoid going to jail, as Ms. Cyr could, and in fact did, have the Debtor incarcerated for non-payment of his domestic support obligation.  Accordingly, the Plaintiff has met her burden with respect to the fourth element of her claim.

Finally, the fifth element of the Plaintiff's claim is that "the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made."  The Debtor does not dispute that the Plaintiff loaned him $60,000.00 or that he failed to repay her in full (doc. # 24, p. 1); he conceded at the evidentiary hearing that he owed the money to the Plaintiff.[5]  Accordingly, the Plaintiff has met her burden with respect to the fifth and final element of her claim.

---

[4] The checks were written to Ms. Cyr using her married name, Karen Jadallah, which this Court notes is the name used to indicate Ms. Cyr in the caption for the Chittenden Family Court divorce proceeding.  (See Debtor's Ex. D.)

[5] The Plaintiff introduced at the evidentiary hearing a handwritten document dated February 8, 2005, indicating that the Plaintiff is lending the Debtor $50,000.00 and that he would repay her by June 15, 2005.  (See Pl.'s Ex. 7.)  As the Debtor does not dispute that he owes the money to the Plaintiff, there is no need for the Court to address the merits or legal significance of this document.

## Conclusion

For the reasons set forth above, the Court finds that the Plaintiff's claim against the Debtor is excepted from the Debtor's discharge pursuant to § 523(a)(2)(A). Judgment is granted in favor of the Plaintiff in the amount sought in her Complaint, namely $45,000.00, plus costs of $314.17, plus pre-judgment interest of $9,202.20, plus post-judgment interest of $10,944.60, for a total of $65,460.97. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

July 21, 2010  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge